Jonathan A. Stieglitz, Esq.
THE LAW OFFICES OF
JONATHAN A. STIEGLITZ
1845 W. Olympic Blvd., Suite 800
Los Angeles, California 90064
Tel: (323) 979-2063
Fax: (323) 488-6748
Email:jonathan.a.stieglitz@gmail.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION**

JACQUELINE CONANT,

    Plaintiff,

v.

VERIFIED FIRST, LLC,

    Defendant.

Case No.:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

## COMPLAINT

Plaintiff Jacqueline Conant ("Plaintiff") brings this action on an individual basis, seeking statutory and other damages against Defendant Verified First, LLC ("Verified First") and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and upon information and belief, as follows:

### PRELIMINARY STATEMENT

1. This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

2. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

3. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies.

4. The FCRA provides consumers with a private right of actions against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

5. Defendant Verified First has produced and sold consumer reports concerning Plaintiff's background that wrongfully reported that Plaintiff's criminal history by including a record that was ordered restricted and sealed by the court.

6. As a result of Verified First's wrongful reporting, Plaintiff was damaged by, without limitation, suffering harm to her employment qualifications, loss of income, and considerable stress and anguish.

**PARTIES**

7. Plaintiff is a natural person and resident of the State of California and qualifies as a "consumer" as defined and protected by the FCRA.

8. Defendant Verified First is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f), as it "regularly engages in whole or in part in the practice of assembling or evaluating credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce. Defendant Verified First is an Idaho limited liability company that maintains its primary place of business at 1550 S Tech Lane, Suite 200, Meridian, Idaho 83642. Defendant regularly conducts business in this judicial District and can be served with process by way of its registered agent, Nicholas Massoth at 1550 S Tech Lane #110, Meridian, Idaho 83642.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. Defendant regularly conducts business within the State of California and violated Plaintiff's rights under the FCRA in the State of California as alleged more fully below.

10. Venue is proper in this District under 28 U.S.C. 1391(b) because Plaintiff resides in this District, Defendant conduct regular business in this District, and communications giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

Complaint - 3

11. As of April of 2022, Plaintiff worked as an independent contractor performing housekeeping services for a company called Turnkey. Around this time, Plaintiff was notified that Turnkey had been purchased by Vacasa LLC ("Vacasa"), and as a result of the corporate purchase, Plaintiff would be offered a position as a formal employee with new and additional benefits starting in early May.

12. Plaintiff was ecstatic because this role was her primary source of income and the additional benefits and security of being an employee instead of an independent contractor would add much needed stability to her life and finances.

13. On May 9, 2022, Plaintiff received her formal offer of employment with Vacasa, contingent on completion of a background check.

14. To Plaintiff's disbelief, on May 24, 2022, Plaintiff was notified by Vacasa that her employment offer was being rescinded due to the results of a background check report furnished by Defendant.

15. The report provided by Defendant, dated May 13, 2022, contained no adverse information other than three county criminal record entries from the San Bernardino Victorville Court. These entries included a misdemeanor conviction for mail theft, a felony conviction for buying/receiving stolen property, and a felony charge for grand theft with an as-of-the-reporting-date active warrant. *See* Exhibit 1.

16. Plaintiff was shocked and appalled to see these entries, as each was attributable not to her, but rather to her sister, Chelsea Louise Conant. In fact, each of the entries listed the name of record as "Chelsea Louise Conant".

Complaint - 4

17. Upon information and belief, the sole basis for including her sister's criminal history on Plaintiff's report was her sister's use of Plaintiff's name as an "alias", which was listed on the San Bernardino Court docket. This alias was among five other listed aliases, four of which were some variation of Chelsea Conant, Plaintiff's sister.

18. Further, the report purports to have confirmed Plaintiff's identity for each entry based on a "DOB on Record" of "XXXX-06-25", which matches the day and month of Plaintiff's date of birth. However, a simple review of the San Bernardino Victorville Court online case search reveals that all three of the cases associated with these inaccurate report entries contain no date of birth on record. There were no other personal identifiers on the court's records that would associate Plaintiff with these criminal proceedings.

19. Plaintiff was aware that her sister had previously wrongfully used her name during her entanglements with the criminal justice system, and promptly disputed the accuracy of this information with Defendant.

20. Despite the clearly erroneous and misleading inclusion of her sister's criminal history, and the lack of identifying factors that would associate Plaintiff with these entries, Plaintiff was forced into a back and forth with Defendant involving numerous emails and phone calls, throughout which Defendant asserted that to have the record removed, Plaintiff would have to "prove" it was not her by providing her criminal sister's ID, shifting on Plaintiff their entire burden to complete a reasonable investigation.

21. In fact, despite the weak basis for including the criminal entries in her report in the first place, Defendant nonetheless refused to remove the inaccurate information after

Complaint - 5

Plaintiff's dispute even after acknowledging on July 5 that at that time they still had not received the records from the San Bernadino Court, the appropriate furnisher of the adverse information.

22.     On July 13, 2022, Plaintiff received an email from Defendant in which they denied her disputed, affirmed the inaccurate reporting of her sister's criminal history, and relayed the results to Vacasa.

23.     On August 3, 2022, Plaintiff received final notice from Vacasa of their decision to rescind her offer of employment due to the results of her background check, including an updated copy of her report which still included the inaccurate criminal history.

24.     As a direct result of Defendant's inaccurate reporting, Plaintiff has been damaged.

25.     Because of the inaccurate information provided to Plaintiff's employer by Defendant, Plaintiff's offer for employment with Vacasa was rescinded.

26.     As a direct result, Plaintiff has suffered distress and mental anguish induced by the drastic loss of income and the stress from losing out on the benefits and security of a formal employee opportunity, as well as the time wasted attempting to dispute this materially misleading and inaccurate information on her background report. Plaintiff has had to depend on small independent jobs to support herself financially and has additionally been forced to rely on food stamps to sustain herself as a result of this lost opportunity.

27. It is patently inaccurate and/or materially misleading to report Plaintiff's sister's criminal record on her background report because the criminal record does not belong to her.

28. Upon information and belief, had Defendant not erroneously and inaccurately reported Plaintiff's sister's criminal record on her background report, Plaintiff would not have had her offer of employment with Vacasa revoked.

29. Upon information and belief, Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information it provides to employers.

30. Upon information and belief, Defendant knowingly and willfully maintains deficient procedures because reporting more information is more profitable than reporting less and potentially leaving information off of a consumer report.

31. For example, upon information and belief, Defendant allowed another person's record to appear on Plaintiff's consumer report solely on the basis of an "alias", without first confirming the accuracy with the actual court records, which are readily and publicly available.

32. Defendant regularly seeks out and procures criminal case information with the intention of including it in the consumer reports it sells for profit.

33. Instead of employing reasonable procedures as required by the FCRA, Defendant blindly collects information from unreliable third-party vendors to repackage and sell in its own employment screening products.

Complaint - 7

34. Alternatively, upon information and belief, Defendant buys consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is of maximum possible accuracy

35. Defendant, a sophisticated employment screening consumer reporting agency, is aware that criminal information is often inaccurate or incomplete.

36. Upon information and belief, Defendant purchased Plaintiff's information from one or more third-party vendors that merely compile criminal data from various online sources without verifying its accuracy with actual court records.

37. Upon information and belief, none of Defendant's third-party vendors warrant the accuracy of the information they sell.

38. Upon information and belief, Defendant does not exercise due diligence in ensuring it is contracting with and/or utilizing reliable third-party vendors.

39. Upon information and belief, Defendant does not conduct periodic quality assurance audits to ensure that it is receiving reliable consumer information from its third-party vendors.

40. Upon information and belief, Defendant has been sued by consumers under the FCRA in the past for erroneously reporting sealed criminal records.

41. Therefore, Defendant has notice that its procedures often result in the preparation of inaccurate consumer reports and dissemination of inaccurate consumer information.

42. Upon information and belief, Defendant knew that the furnisher or third-party vendor provides inaccurate consumer data with some regularity.

43. Upon information and belief, Defendant blindly relied on the information provided by the furnisher or third-party vendor despite having reason to know it may be unreliable.

44. Upon information and belief, Defendant does not maintain reasonable procedures to assure it reports consumer information with maximum possible accuracy because it would be more expensive to independently verify the accuracy of the information it includes in its consumer reports.

45. It is wholly unreasonable for Defendant to maintain procedures that it knows often lead to inaccurate consumer reporting with grave consequences.

46. Despite knowing that its procedures are unreasonable, Defendant recklessly, knowingly, and/or negligently fails to employ procedures that assure that maximum possible accuracy of consumer information compiled and published in its consumer reports.

47. Upon information and belief, Defendant does not independently investigate the information it procures from third-party vendors before including it in consumers' background reports.

48. Instead, Defendant has unreasonably decided that it is entitled to rely completely on third-party vendors to ensure the information included in its consumer reports is accurate.

49. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

50. Defendant knows that its services are used to make significant consumer decisions.

51. Upon information and belief, Defendant know or should have known that employers make decisions on employment decisions on employment status based solely on the information contained in its consumer reports.

52. Upon information and belief, Defendant knew or should have known the negative impact that reporting another person's criminal record on a consumer's report was likely to have on that consumer's employment status.

53. Upon information and belief, Defendant purchases public record information from third-party vendors.

54. Upon information and belief, those third-party vendors explicitly disclaim the accuracy of the information they provide to Defendant.

55. Upon information and belief, Defendant reports and publishes the information provided by the third-party vendors without verifying its accuracy.

56. Upon information and belief, Defendant knows or has reason to know that the third-party vendors it procures consumers' information from often provides inaccurate, misleading, and incomplete records.

57. Upon information and belief, Defendant reports and publishes unverified public records information without employing reasonable procedures to assure its accuracy because employing such procedures would cut into its profits.

58. At common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

59. As a direct result of Defendant's conduct, Plaintiff was denied employment with Vacasa.

60. As a direct result of Defendant's conduct, Plaintiff lost out on income from Vacasa from May 24, 2022, until present.

61. Consequently, Plaintiff wasted her time including time spent attempting to correct this inaccurate information with Defendant.

62. As a further direct result of Defendant's conduct, Plaintiff suffered severe mental distress, including humiliation, embarrassment, and has not been able to secure new employment.

63. As a direct result of Defendant's inaccurate and/or misleading reporting, Plaintiff has suffered actual damages including, but not limited to: job denial, loss of income, wasted time, financial insecurity, and emotional distress, including but not limited to, humiliation, embarrassment, stress, frustration, and mental anguish.

64. Defendant's violations of the FCRA were willful. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

65. Alternatively, Defendant's violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1781o.

66. In any event, Defendant is liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## CAUSES OF ACTION

### COUNT I
### Violation of the FCRA, 15 U.S.C. § 1681e

67. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

68. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.

15 U.S.C. § 1581e(b) (emphasis added).

69. Verified First violated § 1681e(b) because it failed to follow reasonable procedures to ensure the maximum possible accuracy of the information it attributed to Plaintiff in its consumer reports.

70. Specifically, Verified First willfully, intentionally, recklessly, and/or negligently violated § 1681e(b) by inaccurately and/or misleadingly reporting Plaintiff's criminal record on her background report, despite the record belonging to her sister and

there no being no other corroborating indentifying factors other than a listed "alias" of Plaintiff's name.

71. Verified First's misconduct was a direct and proximate cause of Plaintiff's injuries, as alleged herein.

72. Verified First is therefore liable to Plaintiff for its willful and/or negligent failures to follow reasonable policies and procedures.

73. As a result of Verified First's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

## COUNT II
### Violation of the FCRA, 15 U.S.C. § 1681k

74. Plaintiff incorporates by reference all the preceding allegations as though fully set forth herein.

75. Under 15 U.S.C. § 1681k(a)(2), a consumer reporting agency must:

> maintain strict procedures designed to insure that *whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date*.

15 U.S.C. § 1681k(a)(2) (emphasis added).

76. Verified First failed to ensure that the public record information associated with Plaintiff was complete and up to date.

77. Verified First had actual notice that the information they provided was likely to have an adverse effect on Plaintiff's ability to obtain and maintain employment, as

Vacasa was attempting to purchase this information from Verified First to evaluate Plaintiff for continued and future employment.

78. Verified First's failure to maintain complete and up to date records while preparing Plaintiff's information caused Plaintiff to suffer damages, including statutory and actual damages, as described herein.

79. Verified First's violations of the § 1681k were willful. Therefore, Verified First is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial, pursuant to 15 U.S.C. § 1681n.

80. Alternatively, Verified First's violations of § 1681k were at least negligent. Therefore, Verified First is liable to Plaintiff for statutory and actual damages, pursuant to 15 U.S.C. § 1681o.

## COUNT III
## Violation of the FCRA, 15 U.S.C. § 1681i

81. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

82. Upon receiving a consumer's dispute, consumer reporting agencies are legally required to conduct a reasonable and timely investigation and correct the disputed information, as follows:

> *… if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer*, and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, ***the agency shall, free of charge, conduct a reasonable investigation to determine whether the disputed information is accurate and***

>   ***record the current status of the disputed information, or delete the item from the file…*** before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or the reseller.

15 U.S.C. § 1681i(a)(1) (emphasis added).

83. Verified First violated § 1681i on one or more occasions, as Plaintiff disputed the inaccurate information reported by Verified First, and still, Defendant willfully, intentionally, recklessly, and/or negligently failed to perform a reasonable reinvestigation and correct or remove the inaccurate and/or misleading information within 30 days of receiving notice of Plaintiff's dispute.

84. Instead, Verified First continued to report the inaccurate and/or misleading information and refused to correct the reporting, despite admitting it had yet to receive documentation in support from the San Bernardino Court, the lack of identifying traits with which they could associate the record with Plaintiff, and the significantly apparent factors indicating the record was attributable to Plaintiff's sister, Chelsea Conant.

85. Verified First's violations of §1681i were a direct and proximate cause of Plaintiff's injuries, as alleged herein, and Verified First is therefore liable to Plaintiff for its willful and/or negligent violations of the FCRA.

86. As a result of Verified First's violations of 15 U.S.C. § 1681i, Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. § 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

i. Awarding Plaintiff statutory money damages, actual damages and punitive damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii. Awarding attorneys' fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o, and other relief; and

iii. Awarding any other such relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: September 29, 2022            */s/ Jonathan A. Stieglitz*
                                     Jonathan A. Stieglitz, Esq.
                                     THE LAW OFFICES OF
                                     JONATHAN A. STIEGLITZ
                                     1845 W. Olympic Blvd., Suite 800
                                     Los Angeles, California 90064
                                     Tel: (323) 979-2063
                                     Fax: (323) 488-6748
                                     Email:jonathan.a.stieglitz@gmail.com